```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JEFFERY PORETSKY AND JANET PORETSKY

        Plaintiffs

V.                                                              No. _____

HIRISE ENGINEERING, P.C., MATTHEW
PAPPALARDO, UNITED TECHNICAL                                    CIVIL RICO CASE STATEMENT
CONSULTANTS, L.L.C., GLENN GROGAN,
SIMSOL INSURANCE SERVICES, INC.,
HEZEKIAH ALLISON, and THE STANDARD
FIRE INSURANCE COMPANY,

        Defendants.
-------------------------------------------------------------X
```

1. State whether the alleged unlawful conduct is in violation of 18 U.S.C. 1962(a), (b), (c), and/or (d).

   **Plaintiffs' claim arises under 18 U.S.C. 1962(c).**

2. List the defendants and state the alleged misconduct and basis of liability of each defendant.

   **The defendants are:**

   a. The Standard Fire Insurance Company ("Standard Fire") is an insurance company that issues flood insurance through the Write Your Own ("WYO") program, a cooperative venture between private insurance companies and the Federal Emergency Management Agency ("FEMA"). Standard Fire had knowledge of or was willfully blind to the fraudulent alteration of engineering reports by HiRise Engineering, PC, the engineering firm it retained, who is also a defendant and is discussed below. Standard Fire used these fraudulent reports to fraudulently deny, in whole or in part, flood insurance claims brought by homeowners after Hurricane Sandy.

   b. HiRise Engineering, P.C. ("HiRise") is an engineering firm. HiRise was retained by Defendants Standard Fire and/or United Technical Consultants, LLC to evaluate flood insurance claims after Hurricane Sandy. When the reports of its field engineers concluded that payment to the policyholders was warranted, HiRise fraudulently altered those reports to reflect that Hurricane Sandy floodwaters had not caused any damage.

1

**HiRise referred to this fraudulent alteration of its field engineers' reports as a quality control "review."**

**c.     United Technical Consultants, L.L.C. ("UTC") is an engineering firm retained to evaluate flood insurance claims after Hurricane Sandy. UTC either had knowledge of or was willfully blind to the fraudulent alteration of engineering reports by HiRise and continued to submit claims to HiRise after it learned of the fraud.**

**d.     Glenn Grogan ("Grogan") is an individual who works for UTC. Grogan either had knowledge of or was willfully blind to the fraudulent alteration of engineering reports by HiRise and continued to submit claims to HiRise after he learned of the fraud.**

**e.     Matthew Pappalardo ("Pappalardo") is a department manager at HiRise. Though not a licensed engineer, Pappalardo fraudulently altered and rewrote reports that HiRise field engineers sent to HiRise.**

**f.     National Flood Services ("NFS") is a flood insurance managing and servicing company hired by Standard Fire to manage the adjustment of thousands of Hurricane Sandy claims. NFS had knowledge of or was willfully blind to the falsifying of engineering reports by UTC, Grogan, HiRise and Pappalardo.**

**g.     SIMSOL Insurance Services ("SIMSOL") is an insurance adjusting firm retained to evaluate flood insurance claims after Hurricane Sandy. SINSOL had knowledge of or was willfully blind to the fraudulent alteration of engineering reports by HiRise but continued to submit claims to UTC and HiRise.**

**h.     Hezekiah Allison ("Allison") is an insurance adjuster assigned by SIMSOL to adjust Hurricane Sandy claims. Allison either had knowledge of or was willfully blind to the fraudulent alteration of engineering reports by HiRise.**

3.  List alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.

    **Plaintiffs have brought suit against all of the wrongdoers of whom they are aware.**

4.  List the alleged victims and state how each victim was allegedly injured.

    **Plaintiffs Jeffery and Janet Poretsky owned property located at 976 Jerome Street, Baldwin, New York. After Hurricane Sandy, Plaintiffs filed a flood insurance claim with Defendant Standard Fire. Defendant Standard Fire**

**then requested that Defendant UTC and/or HiRise conduct an engineering analysis. UTC and/or HiRise sent licensed New York engineer Andrew Braum to inspect the property. After Braum submitted his report to HiRise, Defendant Pappalardo, who is not an engineer, "reviewed" report before issuance. The "reviewed" report concluded that the damage to the home was pre-existing. The "reviewed" report was submitted to Standard Fire and used as a basis for denying coverage. Instead of receiving the full insurance payment to which they were entitled, Plaintiffs only received approximately $55,000.**

5. Describe in detail the pattern of racketeering activities or collection of unlawful debts alleged for each RICO claim. The description of the pattern of racketeering shall include the following information:

   a. List the alleged predicate acts and the specific statutes that were allegedly violated;

      **The alleged predicate acts are mail fraud (18 U.S.C. §1341) and wire fraud (18 U.S.C. §1343).**

   b. Provide the date of each predicate act, the participants in each predicate act, and a description of the facts constituting each predicate act;

      **HiRise, Pappalardo, UTC, Grogan, SIMSOL, Allison, and Standard Fire transmitted, by mail and/or wire, a false engineering report on or about December 24, 2012. The report fraudulently misrepresented the cause of the damage to Plaintiffs' property (by saying that the damage to the foundation wall was pre-existing instead of caused by Hurricane Sandy), whether the damage to the property was covered by Plaintiffs' flood insurance policy, and the amount of proceeds to which Plaintiffs were entitled under the flood insurance policy.**

   c. If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b). Identify the time, place, and substance of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;

      **The misrepresentations were contained in the false report which was transmitted to Plaintiffs. Defendants, through the report, fraudulently misrepresented the cause of the damage**

3

      **to Plaintiffs' property (by saying that the damage to the foundation wall were pre-existing instead of caused by Hurricane Sandy), whether the damage to the property was covered by Plaintiffs' flood insurance policy, and the amount of proceeds to which Plaintiffs were entitled under the flood insurance policy.**

d.  State whether there has been a criminal conviction for violation of any predicate act;

   **There have not yet been any criminal convictions stemming from the predicate acts that form the basis of this litigation.**

e.  State whether civil litigation has resulted in a judgment with regard to any predicate act;

   **There have not yet been any civil judgments stemming from the predicate acts that form the basis of this litigation, though United States Magistrate Judge Gary R. Brown of the Eastern District of New York, after an evidentiary hearing, dubbed similar alteration of reports "reprehensible" and "indefensible[.]"**

f.  Describe how the predicate act forms a "pattern of racketeering activity;"

   **In addition to Plaintiffs' insurance claim, the defendants' scheme has also facilitated the denial, in whole or in part, of many other insureds' legitimate insurance claims. The defendants have made fraudulent misrepresentations to hundreds of policyholders over the two years since Hurricane Sandy, and the Defendants' activity poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed.**

g.  State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe the alleged relationship and common plan in detail.

   **The common plan behind the predicate acts revolves around the system by which FEMA reimburses the claims handling and litigation expenses of WYO carriers like Standard Fire. WYO carriers can actually profit by incurring additional expenses. HiRise, Pappalardo, UTC, Grogan, NFS, SIMSOL, and Allison could spur and prolong litigation so that they could charge and collect unnecessary expense and litigation**

4

**support service fees and expenses. Standard Fire participated in the scheme so it could justify denying or underpaying claims; therefore it could avoid an audit by FEMA and having to reimburse FEMA for overpayments.**

6. Describe in detail the alleged "enterprise" for each RICO claim. A description of the enterprise shall include the following:

    a. State the names of the individuals, partnerships, corporations, associations, or other legal entities which allegedly constitute the enterprise;

    **The HiRise Enterprise consists of the defendants in this case: (1) HiRise; (2) Pappalardo; (3) UTC; (4) Grogan; (5) SIMSOL; (6) Allison; (7) National Flood Services, and (8) Standard Fire.**

    b. A description of the structure, purpose, function, and course of conduct of the enterprise;

    **The HiRise Enterprise is designed to issue illegitimate engineering reports to be used to fraudulently deny or underpay insurance claims for the individual and collective economic gain of the Enterprise's members.**

    **Due to incentives in the reimbursement program, WYO carriers can actually profit by incurring additional expenses. HiRise, Pappalardo, UTC, Grogan, NFS, SIMSOL, and Allison could spur and prolong litigation so that they could charge and collect unnecessary expense and litigation support service fees and expenses. Standard Fire participated in the scheme so it could justify denying or underpaying claims; therefore it could avoid an audit by FEMA and having to reimburse FEMA for overpayments.**

    **Standard Fire, as a WYO carrier, can litigate disputed insurance claims with taxpayer dollars and risks extensive audits if it overpays claims, so it and the other members of the Enterprise, whom Standard Fire hires to help litigate claims, benefit financially from lawsuits against Standard Fire. Standard Fire, with the assistance of HiRise's fraudulent engineering analyses and reports, improperly denies and underpays insurance claims to incite litigation, which benefits all of the Enterprise's members financially.**

  c. A statement of whether any defendants are employees, officers, or directors of the alleged enterprise;

  **The HiRise Enterprise consists of a collection of corporate entities (and some of their employees and partners), but it is not itself a corporate entity; so the Enterprise does not have employees, officers, or directors.**

  d. A statement of whether any defendants are associated with the alleged enterprise;

  **All of the defendants work together to make up the HiRise Enterprise.**

  e. A statement of whether plaintiff is alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise;

  **The defendants, combined, comprise the HiRise Enterprise.**

  f. If any defendants are alleged to be the enterprise itself, or members of the enterprise, an explanation of whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

  **The defendants are all perpetrators in the HiRise Enterprise; all of the defendants either had a hand in committing the fraud or allowed the perpetration of the fraud through willful blindness.**

7. State and describe in detail whether plaintiff is alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

 **The HiRise Enterprise essentially consists of the defendants' pattern of racketeering activity.**

8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual daily activities of the enterprise, if at all.

 **The HiRise Enterprise is a pattern of racketeering activity perpetrated by several entities and individuals that actually were formed and are employed**

6

**for other purposes. HiRise is an engineering firm; Pappalardo, though not a licensed engineer, is a department manager for HiRise. UTC is also an engineering firm; Grogan works for UTC. NFS is a flood insurance managing and servicing company. SIMSOL is an insurance claims adjusting firm. Allison is an insurance adjuster. Standard Fire is an insurance company.**

**However, the expense reimbursement policy of the WYO program gave rise to the HiRise Enterprise when these entities and individuals learned how to exploit that policy.**

9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

    **The fraudulent denial and underpayment of claims is designed both to stave off FEMA audits and incite litigation, which benefits all of the defendants.**

    **Due to incentives in the reimbursement program, WYO carriers can actually profit by incurring additional expenses. HiRise, Pappalardo, UTC, Grogan, NFS, SIMSOL, and Allison could spur and prolong litigation so that they could charge and collect unnecessary expense and litigation support service fees and expenses. Standard Fire participated in the scheme so they could justify denying or underpaying claims; therefore Standard Fire could avoid an audit by FEMA and having to reimburse FEMA for overpayments.**

    **Standard Fire avoids both FEMA audits and the possibility of reimbursing FEMA for excessive payouts to flood insurance policyholders. HiRise (along with Pappalardo, UTC, Grogan, NFS, SIMSOL, and Allison) collects fees from Standard Fire (which gets reimbursed by the taxpayers) for investigating and helping to litigate disputed claims.**

10. Describe the effect of the activities of the enterprise on interstate or foreign commerce.

    **The members of the HiRise Enterprise write and service flood insurance policies; investigate and adjust flood insurance claims; and litigate disputed flood insurance claims nationwide. Their actions affect thousands, if not millions, of policyholders all over the United States.**

11. If the complaint alleges a violation of 18 U.S.C. 1962(a), provide the following:

    a. State who received the income derived from the pattern of racketeering activity or through the collection of unlawful debt; and

7

  b. Describe the use or investment of such income.

  **Plaintiffs are not alleging a violation of 18 U.S.C. 1962(a) at this time.**

12. If the complaint alleges a violation of 18 U.S.C. 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

  **Plaintiffs are not alleging a violation of 18 U.S.C. 1962(b) at this time.**

13. If the complaint alleges a violation of 18 U.S.C. 1962(c), provide the following:

  a. State who is employed by or associated with the alleged enterprise, and

  **The defendants comprise the HiRise Enterprise. The Enterprise is not itself an entity and does not have employees.**

  b. State whether the same entity is both the liable "person" and the "enterprise" under 18 U.S.C. 1962(c).

  **The HiRise Enterprise consists of the defendants, all of whom are liable persons under the statute.**

14. If the complaint alleges a violation of 18 U.S.C. 1962(d), describe in detail the facts showing the existence of the alleged conspiracy.

  **Plaintiffs are not alleging a violation of 18 U.S.C. 1962(d) at this time.**

15. Describe the alleged injury to business or property.

  **Plaintiffs, as a result of the defendants' fraud, were deprived of the insurance proceeds to which they are entitled. Moreover, Plaintiffs, who were forced to incur out of pocket costs to demolish and rebuild their home because they did not get the insurance proceeds to which they were entitled.**

16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

  **The defendants' scheme used mail and wire services to transmit fraudulent misrepresentations. Those fraudulent misrepresentations stated, among other things, that Plaintiffs' property was not damaged by Hurricane Sandy and that Plaintiffs were not entitled to full proceeds under their flood**

**insurance policy. The transmission of those fraudulent misrepresentations directly led to the deprivation of insurance proceeds to which Plaintiffs were entitled.**

17. List the damages sustained by reason of the violation of 18 U.S.C. 1962, indicating the amount for which each defendant is allegedly liable.

    **Plaintiffs were entitled to full payment under their insurance policy and were paid only approximately $55,000. Additionally, they have incurred further expenses in the forms of litigation expenses. Plaintiffs also suffered other damages.**

    **All of the defendants are equally liable for these damages.**

18. List all other federal causes of action, if any, and provide the relevant statute numbers.

    **Apart from the indictable predicate offenses (18 U.S.C. §§1341 and 1343), Plaintiffs are not alleging any causes of action other than a violation of the RICO statute at this time.**

19. List all pendent state claims, if any.

    **There are no pendent state claims at this time.**

20. Provide any additional information that you feel would be helpful to the court in processing your RICO claims.

    **Extensive additional information is set forth in Plaintiffs' complaint and the attachments thereto.**

DATED: July 8, 2015

            Respectfully submitted,

            **THE MOSTYN LAW FIRM**

            */s/ J. Steve Mostyn*
            J. Steve Mostyn
            JM9387
            Texas State Bar No. 00798389
            3810 West Alabama Street
            Houston, Texas 77027
            (713) 861-6616 (Office)
            (713) 861-8084 (Facsimile)

*Pending Admission Pro Hac Vice*

**DENIS G. KELLY & ASSOCIATES, P.C.**

*/s/ Denis G. Kelly*
Denis G. Kelly
DK7734
New York State Bar No. 2520906
74 West Park Avenue
Long Beach, NY 11561
(516) 897-0800 (Office)
(516) 897-0812 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

Case 2:15-cv-04012-JFB-AYS   Document 1-2   Filed 07/08/15   Page 10 of 10 PageID #: 36