UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────

№ 15-CV-4012 (JFB) (AYS)

───────────────────

JEFFERY PORETSKY AND JANET PORETSKY,

Plaintiffs,

VERSUS

HIRISE ENGINEERING, P.C.; MATTHEW PAPPALARDO; UNITED TECHNICAL
CONSULTANTS, L.L.C.; GLENN GROGAN; SIMSOL INSURANCE SERVICES, INC.;
HEZEKIAH ALLISON; NATIONAL FLOOD SERVICES; AND THE STANDARD FIRE
INSURANCE COMPANY,

Defendants.

───────────────────

**MEMORANDUM AND ORDER**
September 30, 2016

───────────────────

JOSEPH F. BIANCO, District Judge:

Plaintiffs, Jeffery and Janet Poretsky ("plaintiffs"), commenced this action against defendants, HiRise Engineering, P.C. ("HiRise"), Matthew Pappalardo ("Pappalardo"), United Technical Consultants, L.L.C. ("UTC"), Glenn Grogan ("Grogan"), Simsol Insurance Services, Inc. ("Simsol"), Hezekiah Allison ("Allison"), National Flood Services ("NFS"), and Standard Fire Insurance Company ("Standard Fire") (collectively, "defendants"), alleging that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* and that Standard Fire is liable for breach of contract. Plaintiffs contend that defendants participated in a scheme to fraudulently deny their claim for flood insurance to cover damages to their property allegedly caused by Superstorm Sandy ("Sandy") on October 29, 2012.

Defendants have all moved to dismiss plaintiffs' RICO claim. Plaintiffs have also moved to amend their complaint to insert certain state law causes of action arising out of the same allegedly fraudulent conduct. For the reasons that follow, defendants' motions to dismiss are granted and plaintiffs' motions[1] to amend are denied. Specifically, the Court concludes that plaintiffs' RICO claim is preempted by the National Flood Insurance Act (the "NFIA" or the "Act"), and further, that plaintiffs' state law claims would

---
[1] Plaintiffs have filed two motions to amend. (*See* ECF Nos. 103, 116.)

also be preempted, and therefore, any amendment to incorporate them into the complaint would be futile and is denied.

I. BACKGROUND

A. Factual Background

The following facts are taken from the complaint ("Compl."). The Court assumes these facts to be true for purposes of deciding this motion and construes them in the light most favorable to plaintiffs, the non-movants.

Plaintiffs purchased a Standard Flood Insurance Policy ("SFIP") from Standard Fire, against which they made a claim for insurance proceeds after sustaining property damage during Sandy. (Compl. ¶ 21.) Standard Fire allegedly contracted with NFS to handle the "management and adjustment" of its Sandy claims, including plaintiffs' claim. (*Id.*) Plaintiffs allege that NFS subsequently assigned a portion of plaintiffs' claim to UTC and Grogan, which then "assigned the claim to HiRise to conduct an engineering inspection of the Property to determine the nature and extent of the damages." (*Id.* ¶ 23.) HiRise sent an engineer to inspect plaintiffs' property (*id.* ¶ 24), who allegedly determined that plaintiffs' home had sustained extensive damage during Sandy and submitted a report to HiRise conveying this conclusion (*id.* ¶ 16). Plaintiffs claim that, before providing the engineer's report to Standard Fire, HiRise and Pappalardo doctored the report to reflect that the damage was not caused by Sandy. (*Id.*) Standard Fire then used the allegedly falsified report as a basis for denying plaintiffs' claim for flood insurance proceeds. (*Id.*) Plaintiffs assert that the remaining defendants either knew of this allegedly fraudulent conduct or were "willfully blind to the fact that HiRise and Pappalardo were fraudulently altering engineering reports to deny legitimate claims." (*Id.* ¶ 38.)

B. Procedural Background

Plaintiffs filed their complaint on July 8, 2015. On January 15, 2016, defendants, with the exception of Pappalardo, moved to dismiss plaintiffs' RICO claim. Plaintiffs opposed the motions on March 1, 2016, and defendants submitted their replies on March 22, 2016. Pappalardo filed his motion to dismiss on May 16, 2016, plaintiffs responded on June 13, 2016, and Pappalardo submitted his reply on June 27, 2016. On June 13, 2016, plaintiffs filed a motion to amend their complaint. Defendants submitted oppositions to the motion to amend on July 15, 2016. On July 29, 2016, plaintiffs responded in support of their motion to amend and simultaneously filed an "Amended or Supplemental Motion for Leave to Amend their Complaint" and a "Motion for Continuance of Defendants' Renewed Motions to Dismiss." Defendants were permitted to submit letters in response to the renewed motion to amend and the motion for continuance. Oral argument was held on September 8, 2016. All the motions are now considered fully briefed, and the Court has considered all the parties' submissions.

II. DISCUSSION

A. Defendants' Motions to Dismiss

1. The National Flood Insurance Act

As noted, the insurance policy at issue here is an SFIP. Such policies are the product of and subject to a unique statutory scheme, some background on which will be helpful for the instant analysis. The Fifth Circuit, in *Campo v. Allstate Insurance Co.*, provided

the following explanation of the regulatory framework at issue:

> By enacting [the NFIA], Congress established the [National Flood Insurance Program (the "Program" or the "NFIP")] to make flood insurance available on reasonable terms and to reduce fiscal pressure on federal flood relief efforts. [The Federal Emergency Management Agency ("FEMA")] administers the Program. Within the Program, the [Write-Your-Own ("WYO")] program allows private insurers to issue flood insurance policies in their own names. Under this framework, the federal government underwrites the policies and private WYO carriers perform significant administrative functions including arranging for the adjustment, settlement, payment and defense of all claims arising from the policies. WYO carriers must issue policies containing the exact terms and conditions of the SFIP set forth in FEMA regulations. Additionally, FEMA regulations govern the methods by which WYO carriers adjust and pay claims. Although WYO carriers play a large role, the government ultimately pays a WYO carrier's claims. When claimants sue their WYO carriers for payment of a claim, carriers bear the defense costs, . . . [but] FEMA reimburses these costs.

562 F.3d 751, 754 (5th Cir. 2009) (internal citations and quotation marks omitted).

Section 4072 of the Act also provides for a federal cause of action for aggrieved insureds against their flood insurance carrier:

> Upon the disallowance by the Administrator of any such claim, or upon the refusal of the claimant to accept the amount allowed upon any such claim, the claimant, within one year after the date of mailing of notice of disallowance or partial disallowance by the Administrator, may institute an action against the Administrator on such claim in the United States district court for the district in which the insured property or the major part thereof shall have been situated, and original exclusive jurisdiction is hereby conferred upon such court to hear and determine such action without regard to the amount in controversy.

42 U.S.C. § 4072.

Additionally, and of particular importance here, the regulations implementing the Program further provide that: "*all disputes arising from the handling of any claim under the [SFIP] are governed exclusively* by the flood insurance regulations issued by FEMA, the National Flood Insurance Act . . . and Federal common law." 44 C.F.R. pt. 61, app'x A(1), art. IX (emphasis added). For ease of reference, the

Court will refer to this provision as "Article IX." The italicized language was "added to ensure uniform interpretation of [the] SFIP and to clarify that 'matters pertaining to the [SFIP], including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law.'" *Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 772 (8th Cir. 2013) (quoting 65 Fed. Reg. 34,824, 34,826-27 (May 31, 2000) (second alteration in original)).

Given the expansive language in Article IX, the vast majority of courts have held that extracontractual state law and even federal common law claims arising from the handling and disposition of SFIP claims are preempted by the Act, and that dissatisfied insureds must instead seek redress from their carrier as provided in Section 4072. *See id.* at 773 (explaining that the plain language of Article IX and the stated purpose for amending it, "reflect[ed] a clear intent to preempt claims under state law" (quoting *Shuford v. Fidelity Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337 (11th Cir. 2007) (internal quotation marks omitted)), but noting that the NFIP "specifically allows a policyholder to sue a WYO insurer for breach of contract" pursuant to 42 U.S.C. § 4072); *see also Harris v. Nationwide Mut. Fire Ins. Co.*, No. 15-6132, 2016 WL 4174381, at *3 (6th Cir. Aug. 8, 2016) ("The NFIA indisputably preempts state-law causes of action based on the handling and disposition of SFIP claims."); *Wright v. Allstate Ins. Co.*, 500 F.3d 390, 394 (5th Cir. 2007) (noting that "[e]ven though the NFIA does allow a policyholder to sue a WYO insurer for amounts due under the contract, nowhere in the NFIA or the SFIP does Congress explicitly reference any right of a policyholder to bring extra-contractual claims against a WYO insurer," and, therefore, dismissing federal common law claims against carrier); *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 268 (3d Cir. 2004) ("[S]tate-law claims are preempted by the NFIA."); *Melanson v. U.S. Forensic, LLC*, No. 15CV4016ADSGRB, 2016 WL 1729493, at *7 (E.D.N.Y. Apr. 30, 2016) ("[E]very circuit to address that question has concluded that the NFIA neither creates nor authorizes an extra-contractual right of action for insureds who are dissatisfied with the handling of a claim under the Program. Rather, these same courts have consistently found that Congress intended for the NFIP to preclude such claims when the underlying facts arise from a WYO carrier's administration of the Program."); *Hogan v. Fid. Nat. Prop. & Cas. Ins. Co.*, No. 3:13-CV-9 GLS/DEP, 2015 WL 2114267, at *4 (N.D.N.Y. May 6, 2015) ("Concurring with the reasoning of other circuit courts that have spoken on this issue, this court has held that the NFIA does not expressly authorize insureds to bring extra-contractual state law claims related to the handling of a flood insurance claim.").[2] This Court finds the analysis in these cases to be persuasive in light of the plain language of Article IX and the clear statutory purpose of the NFIP.

2.  Preemption of Plaintiffs' RICO Claim

Notwithstanding this overwhelming weight of authority regarding

---

[2] The court in *Moffett v. Computer Sciences Corp.* offered the following useful observation regarding the preemption of extracontractual claims: "[A]pplication of the preemption doctrine would not work an undue hardship on aggrieved insureds since they always retain a contract remedy. If an insured can recover in contract for a shortfall in benefits, a tort remedy would add little to the enterprise. If an insured was in fact defrauded in the adjustment of his claims[,] . . . he remains entitled to a full recovery of direct losses by suing in contract." 457 F. Supp. 2d 571, 583 (D. Md. 2006).

extracontractual state law and federal common law claims, plaintiffs argue that their federal statutory civil RICO claim is not preempted by the NFIA. After briefing on the motion to dismiss was complete, Judge Spatt issued a well-reasoned and thorough decision in *Melanson v. U.S. Forensic, LLC*, addressing this exact argument and concluding that the Act preempted the plaintiff's civil RICO claim that alleged misconduct in the handling of an SFIP coverage claim. *See* 2016 WL 1729493, at *14. The decision noted that, although no Court had yet considered whether RICO claims were subject to preemption under the Act, most courts (as discussed above) had determined that state law claims and even federal common law claims were "precluded by the provisions of the NFIP, which provides the exclusive remedy for all claims arising from a WYO carrier's handling of claims under an SFIP," and concluded that there was "no principled basis . . . for refusing to extend those holdings and their underlying rationale to the facts of th[e] case." *Id.* at *12. In reaching this conclusion, the opinion highlighted several considerations that this Court also finds salient and persuasive.

First, *Melanson* rejected an argument, advanced by plaintiffs here, that one federal statute (e.g., the NFIA) may not preempt another (e.g., RICO). The decision noted that "it is a 'well-established principle that, in most contexts, a precisely drawn, detailed statute pre-empts more general remedies,'" *id.* at *11 (quoting *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 512 (E.D.N.Y. 2011)), and provided several examples where more detailed statutory schemes had preempted RICO claims, *id.* (citing *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634, 637-38 (2d Cir. 1989) (holding that because the Energy Reorganization Act specifically provided "a remedy for an employee who has been discriminated against or discharged for making safety complaints," a nuclear power plant employee could not maintain a separate claim under the "ubiquitous" RICO statute alleging that his employer had retaliated against him for whistleblowing); *Palmer v. Trump Model Mgmt., LLC*, No. 14 CIV. 8307(AT), 2016 WL 1544740, at *4 (S.D.N.Y. Mar. 23, 2016) ("Courts in this Circuit have routinely precluded RICO claims where the alleged conduct is already covered by a more detailed federal statute."); *DeSilva*, 770 F. Supp. 2d at 512-13, 15 (concluding that "allowing plaintiffs to recover under civil RICO for claims that are, at their core, FLSA claims would thwart the careful and comprehensive scheme established by Congress to remedy wage and hour violations falling under the FLSA's scope")). It then concluded that, like these statutes, "the complex regulatory scheme set forth in the NFIP is . . . intended . . . to provide the exclusive federal remedy for conduct falling within the Program's scope." *Id.* This Court agrees with this determination. The Act carefully delineates how federal flood insurance policies should be administered and fashions a specific remedy for dissatisfied insureds in Section 4072 in the event that these standards are not met. *See id.* at *14 (explaining that "all material aspects of the flood insurance industry—from the unalterable terms and conditions of flood loss policies, to the structure of [the] reimbursement system[,] . . . to the timing and manner in which an aggrieved policyholder may seek redress—are scrupulously prescribed in the statute"). Where Congress devises such a "careful blend of administrative and judicial enforcement powers," it leads "unerringly to the conclusion that [the statute] provides the exclusive judicial remedy for claims [falling within its scope]." *Brown v. GSA*, 425 U.S. 820, 833-35 (1976). Thus, it is clear that not only is the Act capable of preempting claims

under RICO, but further that it is appropriate that the NFIA should apply to the preclusion of RICO, given that the Act is the more "precisely drawn [and] detailed statute." *Id.* at 834.

The *Melanson* decision also noted that courts holding that state law claims were preempted by the Act had emphasized that a primary purpose of the Act was to make flood insurance affordable, and allowing insureds to bring duplicative extracontractual claims would run counter to that objective. *See* 2016 WL 1729493, at *8, *13. As the Third Circuit in *C.E.R. 1988, Inc. v. Aetna Casualty & Surety Co.* observed, "a central purpose of the Program is to reduce fiscal pressure on federal flood relief efforts. . . . State tort suits against WYO companies, which are usually expensive, undermine this goal." 386 F.3d 263, 270 (3d Cir. 2004). *Melanson* rightly observed that this same reasoning applies with equal force in considering whether a plaintiff should be permitted to maintain a RICO claim alongside the remedy outlined in Section 4072:

> In the Court's view, there is no logical basis for concluding that th[e] concern [about the harmful effects that duplicative flood loss claims would have on the public fisc] is unique to state tort suits. In fact, the prospect of dissatisfied insureds pursuing civil RICO actions against WYO companies and their outside contractors, in which treble damages and other statutory forms of relief are authorized, would, in the Court's view, pose an equal, if not greater financial risk.

2016 WL 1729493, at *13. This Court agrees. Permitting duplicative RICO claims to proceed would be incompatible with Congress's intent that the Act "reduce fiscal pressure on federal flood relief efforts." *Campo*, 562 F.3d at 754; *see also Wright*, 500 F.3d at 397 (noting that to permit an insured to bring a cause of action against a WYO insurer other than the one specifically provided for in Section 4072 would not further the Act's purpose of "reliev[ing] the burden on the federal treasury caused by flood damage" because "[s]ubjecting the government to extra-contractual claims on flood insurance policies increase[s] rather than confine[s] the burdens on the federal government and the federal fisc").

In light of these considerations, among others,[3] the *Melanson* court concluded that, like extracontractual state and federal

---

[3] *Melanson* also noted that a number of courts have observed that preempting extracontractual claims under the Act advances Congress's desire for uniformity in the administration of the Program. 2016 WL 1729493, at *12-13. As one court noted, "subjecting WYO companies to fifty different bad faith statutes would undermine Congressional intent to have a uniform system. Courts consistently have recognized that the NFIP's internal consistency and nationwide uniformity would be undermined if WYO companies are subject to each state's bad faith laws." *Peal v. N. Carolina Farm Bureau Mut. Ins. Co.*, 212 F. Supp. 2d 508, 516 (E.D.N.C. 2002). Although this Court agrees that uniformity in the implementation of the Program is a compelling reason for precluding *state law* claims, it has less force in this context, where only one federal statute, RICO, is at issue, not fifty separate state statutes. Nevertheless, the *Melanson* decision correctly observed that:

> It would be patently inconsistent with the federal government's overarching goal of promoting uniformity to disallow a wide range of tort and federal common law claims arising out of claims handling activities by WYO carriers, only to permit a civil RICO claim to proceed on the same underlying facts. If uniformity of

common law claims, RICO claims related to the handling of the insured's SFIP were preempted by the Act pursuant to Article IX. This Court agrees. Thus, to the extent that plaintiffs' RICO claim "aris[es] from the handling of any claim under the policy," it is preempted. 44 C.F.R. pt. 61, app'x A(1), art. IX.

*Melanson* is also instructive on this question of whether plaintiffs' RICO allegations relate to a claims handling dispute and, therefore, are within the scope of Article IX. The RICO claim in *Melanson* alleged that "Standard [Fire] and its outside contractors schemed to deliberately misevaluate the extent of the storm damage sustained [during Sandy]" in order to "systematically and falsely den[y] valid insurance claims." 2016 WL 1729493, at *12. Based on these allegations, the court concluded that there was "no question that the allegations giving rise to [the plaintiff's] complaint relate directly to the adjustment, processing, and payment of his flood loss claim under the Policy" and, therefore, "fall comfortably within the purview of Article IX, which designates the remedial mechanisms in the NFIP as the exclusive method of redress." *Id.* at *12. The RICO enterprise alleged here is nearly identical to the one set forth in *Melanson*—both allege that Standard Fire used engineering reports falsified by contractor defendants to wrongfully deny claims for insurance coverage. This Court agrees that these allegations, which, at their core, challenge defendants' refusal to pay plaintiffs' insurance claim, amount to nothing more than a "dispute[] arising from the handling of a[] claim under the policy"[4] and, therefore, are within the ambit of claims preempted by Article IX. *See, e.g.*, *Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 949-50 (6th Cir. 2002) (allegations that carrier refused to pay insured's claim and failed to affirm coverage were "based on [the carrier's] handling and denial of coverage under the SFIP" and therefore were clearly preempted by the NFIA); *Evanoff v. The Standard Fire Ins. Co.*, No. 1:07-CV-00631, 2007 WL 1577744, at *4 (N.D. Ohio May 29, 2007) (reasoning that the plaintiff's claim for bad faith breach of insurance contract was "in essence . . . [a] suit due to the non-payment of [the] insurance claim," and therefore "related to the handling and disposition of the insurance claim" and was preempted).

Plaintiffs, however, disagree and argue that their RICO claim is not preempted because it alleges conduct that is fraudulent and, therefore, outside the scope of the agreement between FEMA and Standard Fire and not subject to the Program's limitations

---

      decision is truly to be achieved under the NFIP, Article IX must be recognized as limiting the remedies available to policyholders to those expressly set forth in the Act.

2016 WL 1729493, at *13.

[4] For instance, the complaint makes the following allegations: "In conspiracy with the other [d]efendants, HiRise and Pappalardo fraudulently altered engineering reports[,] . . . [which were] used by Standard Fire to deny the Poretskys' claim" (Compl. ¶ 36); "Defendants HiRise and Pappalardo altered the reports with the specific intent to defraud Plaintiffs out of their legal benefits under the contract with Standard Fire" (*id.* ¶ 37); "Standard Fire, NFS, SIMSOL, and Allison knew or were willfully blind to the fact that HiRise and Pappalardo were fraudulently altering engineering reports to deny legitimate claims" (*id.* ¶ 38); and "Standard Fire's, SIMSOL's, NFS's, and Allison's failure to investigate the facially inaccurate engineering report . . . constitutes 'willful blindness' to the illegal and fraudulent actions of HiRise and Pappalardo; therefore, Standard Fire, NFS, SIMSOL, and Allison are liable under the doctrine of conscious avoidance" (*id.* ¶ 41). These claims all relate to the processing and evaluation of plaintiffs' coverage and, therefore, amount to disputes over how defendants handled plaintiffs' claim and are within the ambit of Article IX.

on remedies. In support of this contention, they point to a provision in the "Loss Payments" section of the regulations regarding "Limitation on Litigation Costs," which reads:

> Following receipt of notice of such litigation, the FEMA Office of the Chief Counsel ("OCC") shall review the information submitted. If the FEMA OCC finds that the litigation is grounded in actions by the Company that are *significantly outside the scope of this Arrangement*, and/or involves issues of agent negligence, then the FEMA OCC shall make a recommendation to the Federal Insurance Administrator regarding whether all or part of the litigation is significantly outside the scope of the Arrangement[, and if the Administrator agrees] . . . any award or judgment for damages and any costs to defend such litigation will not be recognized under Article III as a reimbursable loss cost, expense or expense reimbursement.

44 C.F.R. pt. 62, app'x A(1), art. III(D)(3)(a)-(b) (emphasis added). Plaintiffs argue, "[t]he regulations' contemplation of litigation costs and judgments arising from . . . actions [that are outside the scope of the agreement], and FEMA's refusal to indemnify the WYO carriers for them, would be superfluous if lawsuits arising from those actions were barred." (*See, e.g.*, Pls.' Opp'n to Standard Fire's Mot. to Dismiss 13, ECF No. 73.) *Melanson* disposed of an identical argument, concluding:

> Contrary to the Plaintiff's interpretation, the "Loss Payments" regulation is simply a cost-shifting provision, which authorizes FEMA, under narrow circumstances, and in its sole discretion, to shift the cost of defending an action under the Program from the government to the private carrier. There is no reasoned basis for concluding that this regulation overrides or circumscribes the express limitation of liability contained in Article IX, or otherwise expands the substantive remedies available to policyholders beyond the contractual remedy prescribed in the Act.

2016 WL 1729493, at *15. This Court agrees with that conclusion. *See Southbridge 21 LLC v. Standard Fire Ins. Co.*, No. 3:14-CV-374 GLS/DEP, 2014 WL 4637083, at *4 (N.D.N.Y. Sept. 16, 2014) (concluding that the "limitation on litigation costs provision in FEMA's regulations is neither an explicit nor implicit invitation for extra-contractual claims").[5]

---

[5] Further, at least one court has suggested that whether or not a lawsuit alleges conduct that is "significantly outside the scope of the Arrangement" is not a determination to be made by the courts or that is even possible at this juncture:

> [T]he [decision] by an executive branch official as to whether to deny a WYO company reimbursement for its defense costs can only be made *after* a money judgment has been awarded against the company. Any suggestion by Plaintiff that this court should allow an

8

In addition, as the *Melanson* opinion noted, to hold otherwise would mean that "any time a policyholder unilaterally accused a WYO carrier of negligently adjusting or handling a claim, or otherwise engaging in conduct that was outside the scope of the NFIP arrangement, the carrier would lose the broader benefits and protections of the Program, including the explicit limitation of liability contained in Article IX."[6] 2016 WL 1729493, at *14. It is implausible that Congress would use the "Limitation on Litigation Costs" provision to circumvent the clear, specific, and deliberate limitations on extracontractual remedies established in Article IX. Nor does such an interpretation of this provision comport with the Act's goal of reducing the costs associated with flood insurance, as "[e]ven if FEMA were not required to reimburse [the carrier], allowing extra-contractual state law claims to be brought against WYOs might nevertheless result in an indirect burden on the treasury." *Neill v. State Farm Fire & Cas. Co.*, 159 F. Supp. 2d 770, 778 (E.D. Pa. 2000) (observing that "[w]ithout the guarantee of reimbursements from FEMA, WYOs might have the incentive to overpay claims as a means of decreasing the likelihood of bad faith claims," thereby increasing the burden on the Treasury which would be responsible for the overpayment). Instead, it is clear that the "Limitation on Litigation Costs" provision is intended, not to undo Article IX's restriction on extracontractual remedies, but rather to protect the federal treasury by "invest[ing] FEMA with the discretion to withhold or deprioritize the use of taxpayer dollars for certain categories of claims in administering the Program."[7] *Melanson*, 2016 WL 1729493, at *15.

---

[extracontractual claim] to go forward on the presumption that a FEMA official will later make a determination that [the carrier's] costs are non-reimbursable in reality asks this court to usurp the FEMA official's role and make a determination before-the-fact that the official will judge the funds non-reimbursable.

*Residences at Bay Point Condo. Ass'n, Inc. v. Standard Fire Ins. Co.*, No. CIV.A. 13-02380 FLW, 2013 WL 6252692, at *12 n.9 (D.N.J. Dec. 4, 2013). This issue further highlights the flaw in plaintiffs' misguided attempt to use the "Limitation on Litigation Costs" section to override the plain language of Article IX.

[6] Similarly, the court in *Moffett* further observed:

If determination of what is "significantly outside the scope of the Arrangement" or agent negligence were left to the pleader, FEMA would ostensibly be obliged to decline to reimburse any activity that the pleader might assert in a complaint was "significantly outside the scope of the Arrangement" or that arguably amounted to agent negligence. Every time an aggrieved insured might use these magic words, the WYO carrier would be left to twist in the wind. This would obviously not be in the best interest of the NFIP; WYO carriers might well leave the Program in droves.

457 F. Supp. 2d at 587.

[7] Plaintiffs offer a related argument that fails for similar reasons. They contend that Standard Fire is required to provide notice of plaintiffs' lawsuit to FEMA, but failed to do so, and therefore FEMA is not required to reimburse Standard Fire's defense costs in plaintiffs' action. Thus, plaintiffs argue, because FEMA funds are not at stake, the suit is outside the scope of the Program and not subject to its limitations on remedies. However, even assuming that plaintiffs' contentions regarding notice are correct, Standard Fire's non-compliance would, for the reasons described above, only "operate[] to make the carrier responsible for bearing its own costs, not to expose it to unlimited liability." 2016 WL 1729493, at *16. Similar to the analysis concerning the "Limitation on Litigation Costs" section, it is clear that the provisions

Thus, this Court concludes that plaintiffs' RICO claim is preempted by the NFIA and is, therefore, dismissed.[8]

B.  Plaintiffs' Motion to Amend

After the briefing on the motion to dismiss was complete, plaintiffs moved twice to amend their complaint. (*See* ECF Nos. 103, 116.) Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a party shall be given leave to amend "when justice so requires." "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002); *see Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (finding that leave to amend may be denied based upon the "futility of amendment"). As to futility, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle [it] to relief." *Milanese v. RustOleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

Plaintiffs' second amended complaint ("SAC," ECF No. 116-1) inserts additional causes of action for fraud, interference with contractual relations, professional malpractice, and a claim simply titled, "cause of action against defendants for acts outside the scope of the arrangement under the NFIP." Plaintiffs' fraud claim asserts that defendants altered reports in order to wrongfully deny plaintiffs the insurance proceeds to which they were allegedly entitled pursuant to their insurance policy. (*See, e.g.*, SAC ¶ 99.) Similarly, the tortious interference with contract claim asserts that certain defendants falsified engineering reports, causing Standard Flood to breach its contract with plaintiffs by erroneously denying their claim for coverage. (*See, e.g.*, SAC ¶ 106.) In their claim for professional malpractice, plaintiffs contend that certain defendants used unlicensed professionals in handling plaintiffs' claim, which "caused [p]laintiffs' claim to be denied, and thereby [p]laintiffs to not be paid for their covered damages." (SAC ¶ 118.) Finally, in connection with its "cause of action against defendants for acts outside the scope of the arrangement under the NFIP," plaintiffs seek a declaration that defendants' acts are outside the scope of the NFIP agreement and assert "[t]he claims . . . against Defendants are largely based on actions exceeding Defendants' authority to act on the government's behalf." (SAC ¶ 100.) Plainly, these new causes of action, like the allegations in the original complaint,[9] relate to the handling of claims under the SFIP and, as such, are preempted by Article IX. Therefore, amending the complaint to incorporate them would be futile and, thus, plaintiffs' motions to amend are denied.[10]

---

regarding notice were intended only to facilitate the orderly processing of the suits authorized in Section 4072, not to dismantle the Program's carefully-structured statutory framework.

[8] Defendants also argue that plaintiffs' RICO claim is insufficiently pled. As the Court dismisses the claim on preemption grounds it does not, and need not, reach this argument.

[9] In fact, in its motion to amend, plaintiffs argued that the new claims "are based upon the exact same facts . . . and they also address the exact same wrongs" raised in the original complaint. (Pls.' Mot. to Am. 4, ECF No. 103.)

[10] In their motions to amend, plaintiffs also seek to insert additional allegations related to the lack of notice to FEMA by Standard Fire. For the reasons

### III. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss the RICO claim are granted. Plaintiffs' motions to amend their complaint are denied. Only the breach of contract claim remains, which was pled only against Standard Fire; accordingly, the remaining defendants are dismissed.[11]

SO ORDERED.

---

JOSEPH F. BIANCO
United States District Judge

Dated: September 30, 2016
Central Islip, NY

\*   \*   \*

Plaintiffs are represented by Emily Bliss Marlow and John S. Mostyn, The Mostyn Law Firm, 3810 West Alabama Street, Houston, TX 77027; Gregory F. Cox, Mostyn Law Firm, 6280 Delaware Street, Beaumont, TX 77706; Denis George Kelly, Denis G. Kelly & Associates, P.C., 74 West Park Avenue, Long Beach, NY 11561. Defendant HiRise Engineering, P.C. is represented by Allison Michelle Holubis, Gracie Christine Wright, and Peter A. Meisels, Wilson Elser Moskowitz Edelman & Dicker, 1133 Westchester Avenue, White Plains, NY 10604. Matthew Pappalardo is represented by David M. Pollack, Kenneth Alan Sherman, and Peter T. Shapiro, Lewis Brisbois Bisgaard & Smith LLP, 77 Water Street, Suite 2100, New York, NY 10005. Defendants United Technical Consultants, L.L.C. and Glenn Grogan are represented by David Patrick Feehan, Hannum Feretic Prendergast & Merlino, LLC, 55 Broadway, Suite 202, New York, NY 10006. Defendant Simsol Insurance Services, Inc. and Hezekiah Allison are represented by Frederick M. Klein and Robert M. Sullivan, Sullivan & Klein, LLP, 980 Avenue of the Americas, Suite 405, New York, NY 10018. Defendant National Flood Services is represented by Anne Berkowitz Sekel, Jeffrey Soble, Elizabeth P. Mazzocco, and Jonathan W. Garlough, Foley & Lardner LLP, 321 North Clark Street, Suite 2800, Chicago, IL 60654. Defendant Standard Fire Insurance Company is represented by Stephen E. Goldman and Wystan M. Ackerman, Robinson & Cole, 280 Trumbull Street Hartford, CT 06103.

---

already discussed, such allegations would have no impact on the Court's conclusion that the RICO claim is preempted. Similarly, to the extent plaintiffs seek to include additional allegations related to the indictment returned against Pappalardo and HiRise (*see* ECF No. 120), these allegations do not impact the Court's preemption analysis. In short, all of plaintiffs' new allegations would be futile on the preemption issue.

[11] Although the second amended complaint appears to assert the breach of contract claim against all defendants, at oral argument, counsel for plaintiffs confirmed that this claim is being asserted only against Standard Fire.